IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
00 JUL 20 AM 9:35
COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| GERALD STREET, | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | CV 99-H-0811-NE |
| LOGISTICS ENGINEERING & ENVIRONMENTAL SERVICES, INC. | ) ) | |
| DEFENDANT. | ) ) | |

ENTERED
JUL 20 2000

**MEMORANDUM OF DECISION**

The Court has before it the May 22, 2000 motion for summary judgment of defendant Logistics Engineering and Environmental Services, Inc. ("LESCO"). Pursuant to the Court's May 24, 2000 order, the motion was deemed submitted, without oral argument, on June 20, 2000.

**I. Procedural History**

Plaintiff Gerald Street commenced this action on April 5, 1999 by filing a complaint in this Court, alleging that defendant discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq., and 42 U.S.C. § 1981. Plaintiff also asserts a claim for retaliation under the False Claims Act, 31 U.S.C. §

3730(h).[1]  Defendant's May 22, 2000 motion for summary judgment asserts that no genuine issue of fact exists and that defendant is entitled to judgment as a matter of law.  On June 13, 2000, plaintiff filed a brief in opposition to defendant's motion, and on June 19, 2000, defendant filed a brief in reply.  Both parties have submitted evidence in support of their respective briefs and/or motions.[2]

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

---

[1] Plaintiff also sets forth a Title VII retaliation claim in Count IV of his complaint, which is identical in substance to the retaliation claim brought under the False Claims Act asserted in Count II.  Pursuant to the court's July 9, 1999 order, the caption of Count IV was deemed surplusage, and the content of Count IV will be treated as asserting the same claim as that contained in Count II.

[2] Defendant has submitted the affidavits of Anita Williams, Gilbert H. Edmonson, James H. Ware, and Paul Smith and excerpts from the depositions of Gerald B. Street, Jack Jones, Jim Harrison, Judy Brisson, Anita Williams, Gilbert H. Edmonson, James Ware, Mike Lindsey, and Bernard Downing.
    Plaintiff has submitted the affidavits of Gerald Street and Otis Harris and excerpts from the depositions of Gilbert H. Edmonson, Mike Lindsey, Anita Williams, James Ware, Jack Jones, Jim Harrison, Judy Brisson, Paul Smith, Bernard Downing, Tommy Brown, and Kathy Brewster.

2

as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. <u>Id.</u> at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. <u>Id.</u> at 324.

The substantive law will identify which facts are material and which are irrelevant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Id.</u> at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears

3

the burden of proof on the issue at trial. See <u>Fitzpatrick</u>, 2 F.3d at 1115-17 (citing <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428 (11th Cir. 1991)(<u>en banc</u>)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. <u>Fitzpatrick</u>, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving

4

party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. Fitzpatrick, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts

LESCO is a minority-owned government contractor which provides logistics support services to the military. (Williams Aff. ¶ 2). Plaintiff, who is African-American, began his employment with LESCO in or about July 1995, and was initially hired as a Senior Logistics Analyst/Publications Manager. (Street Aff. ¶ 3). He was later assigned to work on LESCO's

Electronic Technical Manual ("ETM"), which was being produced for the U.S. Army Logistics Support Agency ("LOGSA"). (Street Aff. ¶ 3; Jones Depo., p. 7). On the ETM project, plaintiff acted as a Quality Assurance Team Leader, while Mike Lindsey, another LESCO employee, was responsible for system production. (Street Aff. ¶ 5; Street Depo., p. 319; Ware Aff. ¶ 7). Although plaintiff and Lindsey were required to work together in their respective capacities on the ETM program, the two men had conflicting personalities. According to numerous employees involved with the ETM program, plaintiff and Lindsey were openly and continually in conflict about their respective responsibilities on the ETM program. (Harrison Depo., pp. 14-15; Downing Depo., pp. 17-18; Ware Aff. ¶ 7; Edmonson Aff. ¶ 3). Plaintiff himself testified that the confrontations between himself and Lindsey were "numerous, too numerous to remember." (Street Depo., p. 428).

Both plaintiff and Lindsey expressed complaints about the other, to LESCO employees as well as to LOGSA employees who were working on the ETM program. (See Edmonson Aff. ¶ 3; Street Depo., pp. 398-99). On several occasions, plaintiff reported to Jack Jones, Chief of the acquisition logistics center for LOGSA, that he had a problem with the manner in which Lindsey relayed information to him and in the way Lindsey and his employees interacted with plaintiff and his employees. (See Jones Depo.,

pp. 7, 16). Lindsey discussed the same type issues with Mr. Jones on several occasions. (Jones Depo., p. 24). Plaintiff and Lindsey also consulted James Harrison, LOGSA's program manager, about the difficulties each was having working with the other. (Harrison Depo., pp. 17, 19). Harrison testified that the conflict between plaintiff and Lindsey was impeding the progress of the ETM program, and that in "at least one or two instances, people left the program because of dissatisfaction." (Harrison Depo., pp. 17-19).

Several months into the ETM project, Jack Jones met with both government and LESCO employees to announce that the ETM program was in jeopardy and that cooperation between employees was absolutely imperative.[3] (Jones Depo., p. 21). With regard to this meeting, Jones testified:

> I informed them that the project that was being
> contracted out to LESCO was in trouble and that we
> needed cooperation and we needed the effort of
> everybody on there who was being paid to perform work,
> and that regardless of what the personalities were,
> work had to be done, they had a contract to do it, and
> I expected it done.

Jones also conveyed this message to Gil Edmonson, LESCO's Vice President for Alabama Operations, and explained to Edmonson that

---

[3] Jones did not directly attribute the problems with the ETM program to plaintiff and Lindsey, but stated that if plaintiff and Lindsey were responsible for the problems, LESCO should have intervened and resolved the conflict. (See Jones Depo., p. 20).

7

production schedules were not being met. (Jones Depo., p. 22). Thereafter, Edmonson, Anita Williams, LESCO's Chief Executive Officer, and Jim Ware, LESCO's Vice President for Business Operations, all counseled plaintiff and Lindsey numerous times about resolving their conflict. (Edmonson Depo., pp. 10-11; Edmonson Aff. ¶¶ 3,4; Ware Aff. ¶ 7; Williams Aff. ¶ 4; Lindsey Depo., pp. 21-23; Street Depo., pp. 514-15). Ultimately, however, Edmonson concluded that the problem could not be resolved. (Edmonson Aff. ¶ 4; Edmonson Depo., p. 20). Consequently, he recommended to Williams, and Williams agreed, that plaintiff and Lindsey should be removed from the ETM program. (Edmonson Aff. ¶ 4; Williams Aff. ¶ 5). Both plaintiff and Lindsey were given an option to resign in lieu of termination. (Williams Aff. ¶ 5; Lindsey Depo., p. 25). Lindsey accepted the offer and resigned accordingly; plaintiff opted not to resign and was therefore terminated. (Williams Aff. ¶ 5; Lindsey Depo., p. 25; Street Aff. ¶ 50).

   Since his termination, plaintiff has not applied for any type employment with LESCO. (Williams Aff. ¶ 6). Lindsey has at various times since his resignation provided proposal writing support for LESCO, in the capacity of an independent consultant

8

and a subcontractor through several employers.[4]  (Ware Aff. ¶ 10).

Although plaintiff acknowledges that he and Lindsey had problems working together, he claims that he was *actually* terminated for reporting to the government that LESCO had been overbilling its government clients and engaging in other improper conduct.[5]  (See Plaintiff's Brief at 13).  Plaintiff claims that shortly after telling a coworker that he had reported LESCO to the government, he was terminated.  (Street Aff. ¶¶ 36, 37). Plaintiff also claims that Paul Smith, LESCO's vice president, warned him that if he talked with anyone about LESCO's billing practices, "his ass would be on the street unemployed."  (Street

---

[4] After his resignation from LESCO, Lindsey became employed as a Senior Logistics Analyst with Eagle Support Services, Inc. (Lindsey Depo., p. 9).  He later left this position, and temporarily became an independent consultant, before joining CAS, Inc. a few months later.  (Lindsey Depo., pp. 8-9).  Lindsey then left CAS, and again became an independent consultant.  (Lindsey Depo., pp. 8-9).  After several months as an independent consultant, he was hired by Government Support Services, Inc. ("GSI"), where he is employed to date as a Senior Logistics Analyst.  (Lindsey Depo., p. 8).

[5] The evidence of "overbilling" proffered by plaintiff consists of the following:  one instance where LESCO allegedly billed the government for lost source data and time spent recovering this data, and another instance where plaintiff was allegedly told by Jim Ware not to discuss with anyone the salaries of two new LESCO employees.  (See Street Aff. ¶¶ 9-20). As discussed infra, the substance of these claims is irrelevant because plaintiff is not entitled to protection under the False Claims Act.  See text infra, at 15-16.

9

Aff. ¶ 38). Defendant denies having knowledge that plaintiff had made complaints to the government. (See Defendant's Brief at 10-11).

## V. Plaintiff's Arguments and Applicable Substantive Law

Plaintiff sets forth essentially two claims in the present action. First, plaintiff asserts a claim for disparate treatment on the basis of race in violation of Title VII and section 1981.[6] Specifically, plaintiff argues that he was treated differently than similarly situated white employees with respect to firing/rehiring and assignment of job responsibilities. Second, plaintiff asserts a claim for retaliation under the False Claims Act, 31 U.S.C. § 3730(h), alleging that defendant terminated him for reporting to authorities alleged illegal billing practices occurring at LESCO.

Plaintiff may establish a prima face case of racial discrimination by offering direct evidence, circumstantial evidence, or statistical evidence. See Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989). Plaintiff has not presented any direct evidence of discrimination or statistical evidence

---

[6] Plaintiff's claims of racial discrimination under Title VII and 42 U.S.C. § 1981 will be addressed jointly. See Jones v. Firestone Tire and Rubber, 977 F.2d 527, 536 (11th Cir. 1992) (prima facie case is identical for section 1981 and Title VII claims).

10

relating to this case.[7] To establish a claim on the basis of circumstantial evidence, plaintiff must show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) his employer treated similarly situated employees of other races more favorably; and (4) he was qualified to do the job. <u>Jones v. Bessemer Carraway Medical Center</u>, 137 F.3d 1306, 1310 (11th Cir. 1998); <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997). Once plaintiff has established a prima facie case, an inference of discrimination arises that defendant can rebut by articulating a legitimate, nondiscriminatory reason for the employment action at issue. See <u>McDonnell Douglas v. Green</u>, 411 U.S. 792, 802 (1973). If defendant articulates such a reason, then plaintiff may attempt

---

[7] Plaintiff attempts to make an argument that a statement of one of his coworkers constitutes direct evidence of discrimination. Specifically, the coworker commented in reference to himself, not plaintiff, that "he [the coworker] was just a dumb red-neck from Tennessee." The Court is unsure as to how this comment is race-related, but assuming that it were, it is clearly not direct evidence due to the necessary inferences that would have to be drawn to reach such a conclusion. <u>Carter v. City of Miami</u>, 870 F.2d 578, 581-82 (11th Cir. 1989) (Direct evidence is "evidence which, if believed, would prove the existence of a fact <u>without inference or presumption</u>.") (emphasis added). Moreover, the statement cannot be direct evidence because it was made by someone who had no involvement in the employment action in question. See <u>Trotter v. Board of Trustees of the Univ. of Alabama</u>, 91 F.3d 1449, 1453-54 (11th Cir. 1996) ("For statements of discriminatory intent to constitute direct evidence of discrimination, they must be made by a person involved in the challenged decision.").

11

to show that the proffered reason was merely a pretext for defendant's acts. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

The parties do not dispute that plaintiff is a member of a protected class, that he suffered an adverse employment action, or that he was qualified to do his job. With regard to the third element, plaintiff must produce evidence that similarly situated, nonminority employees were treated more favorably than him. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Plaintiff must show that he and the employees identified are "similarly situated in all relevant aspects." See Holifield, 115 F.2d at 1562. Whether employees are similarly situated depends on "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Holifield, 115 F.3d at 1562; Jones v. Gerwens, 874 F.2d 1534, 1539-40 (11th Cir. 1989) (quoting Moore v. City of Charlotte, 754 F.2d 1100, 1105 (4th Cir. 1985) (the most relevant inquiries in the 'disciplinary context' are 'the nature of the offenses committed and the nature of the punishments imposed.')).

Plaintiff argues first that he was terminated because of his race and not offered an opportunity for rehire while Mike Lindsey, a white employee, was able to resume his employment with

12

LESCO subsequent to his resignation.[8] It is undisputed that both plaintiff and Lindsey were warned numerous times about their on-the-job conduct, that they were simultaneously removed from the ETM program, and that they were both given an opportunity to resign in lieu of termination. It is also undisputed that both men left LESCO, plaintiff in the form of termination and Lindsey in the form of resignation. Finally, it is undisputed that after Lindsey's resignation, he began working for Eagle Support Services, Inc., a company separate and independent from LESCO. Based on the undisputed evidence that plaintiff and Lindsey were treated in exactly the same manner, plaintiff cannot prevail on his termination claim. To the extent plaintiff is asserting a failure to rehire claim, this claim must fail also, for plaintiff has not shown that he has ever applied for any type of employment with LESCO subsequent to his termination.[9]

---

[8]Plaintiff does not specifically assert a claim for failure to rehire, but does assert in his complaint and other pleadings that Lindsey was permitted to remain employed with LESCO subsequent to his resignation. (See Plaintiff's Complaint ¶ 22; Plaintiff's Brief at 12). While it is unclear whether plaintiff is incorporating this argument into his termination claim or intending to assert a separate claim for failure to rehire, the court will nonetheless address failure to rehire as a potential claim.

[9]The evidence reveals that Lindsey has provided proposal writing support for LESCO at various times since his resignation, either in the capacity of an independent contractor or through another employer who has contracted with LESCO. (Ware Aff. ¶ 10). As stated above, however, plaintiff himself has not applied

The Court notes that even if plaintiff had established a prima facie case, defendant has nonetheless come forward with a legitimate, nondiscriminatory reason for the employment action in question. As previously stated, the facts surrounding the termination are not in dispute. After numerous warnings to Lindsey and plaintiff about their on-the-job conflict, defendant determined that the problem was disruptive to the progress of the ETM program, as well as bad for the reputation of the company generally, and that both men should be removed from the ETM program. This Court will not question defendant's business judgment. See Jones, 137 F.3d at 1311, n.16 ("[F]ederal courts do not sit to review the accuracy of the employer's fact findings or of the employer's decision to terminate a plaintiff's employment."). See also Nix v. WLCY Radio/Rahall Communication, 738 F.2d 1181, 1187 (11th Cir. 1984) ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as it is not a discriminatory reason.").

In sum, defendant has articulated a legitimate, nondiscriminatory reason for terminating plaintiff and plaintiff has set forth no evidence that this reason is merely a pretext

---

for employment with LESCO or offered to do any type work for LESCO as an independent contractor or otherwise. Thus, any potential failure to rehire claim is without merit.

for discrimination. Accordingly, even if plaintiff had established a prima facie case on his wrongful termination claim, defendant is nonetheless entitled to summary judgment as to this claim.

Plaintiff's remaining claim is brought pursuant to 31 U.S.C. § 3730(h), which affords employees protection from retaliation, harassment, or other threats to employment for reporting employer violations of the False Claims Act, 31 U.S.C. § 3729 ("FCA"). Generally referred to as the "whistleblower" provision of the FCA, Section 3730(h) provides:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, <u>or assistance in an action filed or to be filed under this section</u>, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h) (emphasis added). The Eleventh Circuit has interpreted section 3730(h) as requiring proof that a false claims action has been filed <u>or</u> that the filing of such an action, by the government or the employer, was a distinct possibility at the time the information was given to authorities. <u>Childree v. UAP/GA AG Chem, Inc.</u>, 92 F.3d 1140, 1146 (11th Cir. 1996).

In the present case, no false claims action has been brought

15

against defendant LESCO, and plaintiff has failed to show that the filing of a claim was ever contemplated by plaintiff or by the government. Accordingly, plaintiff is not entitled to protection under section 3730(h). Assuming arguendo that the filing of such an action had been a "distinct possibility" at the time plaintiff reported the alleged violations, plaintiff has failed to demonstrate that the persons who were involved in the decision to terminate him, including Anita Williams, Gil Edmonson, and Jim Ware, were ever aware that plaintiff had reported alleged FCA violations. See Eberhardt v. Integrated Design & Construction, Inc., 167 F.3d 861, 866 (4th Cir. 1999) (To establish a prima facie case of retaliation under the False Claims Act, an employee must show that "(1) he took acts in furtherance of a qui tam suit [i.e. engaged in protected activity]; (2) his employer knew of these acts; and (3) his employer discharged him as a result of these acts.") (emphasis added). See also Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948, 951 (5th Cir. 1994) cert. denied, 513 U.S. 1154 (1995) ("whistleblower must show the employer had knowledge the employee engaged in protected acticity") (internal citations omitted). Therefore, plaintiff cannot prevail on her retaliation claim for two reasons: (a) no FCA claim against LESCO was filed or contemplated by plaintiff or the government and (b) no causal

16

connection exists between plaintiff's conduct and the employment action in question.

**VI    Conclusion**

In summary, the Court finds that no material issues of fact exist and that defendant LESCO is entitled to judgment as a matter of law as to all claims asserted by plaintiff. A separate order will be entered.

DONE this 20th day of July, 2000.

_____
SENIOR UNITED STATES DISTRICT JUDGE